IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 09-cv-02006-WJM

CHRISTOPHER SELECTMAN,

      Applicant,

v.

ARISTEDES ZAVARAS and
THE ATTORNEY GENERAL OF THE STATE OF COLORADO,

      Respondents.

---

ORDER ON APPLICATION FOR WRIT OF HABEAS CORPUS

---

WILLIAM J. MARTÍNEZ, District Judge

      This matter is before the Court on Petitioner Christopher Selectman's Application

for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 ("Petition") (Doc. No. 1).[1]

Respondents filed an Answer on January 25, 2010.  (Doc. No. 15).  Petitioner filed a

traverse on March 1, 2010.  (Doc. No. 18).  After reviewing the pertinent portions of the

record in this case including the Petition, the Answer, the Traverse, and the state court

record, the Court concludes that the Petition should be denied.

## I.  BACKGROUND

      Following a jury trial in case number 94CR371 in the Arapahoe County District

Court, Petitioner, who was then a juvenile, was convicted of first degree murder-felony

murder, second degree murder, and attempted aggravated robbery.  The following

---

[1] Because the Petitioner appears pro se, the Court construes his filings liberally. *See Haines v. Kerner*, 404 U.S. 519, 520-21(1972).  However, the Court does not serve as his advocate. *See Hall v. Bellman*, 935 F.2d 1106, 1110 (10th Cir.1991).

factual summary is taken from the statement of facts in the Petitioner's amended

opening brief on direct appeal.  Pre-Answer Resp., Ex. C at 2-5.

Late in the afternoon on February 25, 1994, the sixteen-year-old Petitioner, his

friend Isaiah Thomas and Sean Jude were at Petitioner's apartment looking to buy

some marijuana.  Thomas called a friend, McKinley Dixon, from whom he had

purchased marijuana in the past.  Thomas arranged to meet Dixon in a nearby parking

lot.  When Dixon drove up with his friend, Carlos Jones, in the front passenger seat,

Petitioner, Thomas and Jude got into the backseat of Dixon's car to inspect the

marijuana.  Because there was a question about the quantity, they all agreed to find a

scale so that it could be weighed.  Dixon drove the group to a couple of places, but the

search for the scale proved unsuccessful.  The group discussed what to do outside an

apartment complex in Aurora.  Petitioner agreed to buy the marijuana without weighing

it and suggested that he and Dixon go into the building foyer to make the transaction.

What happened next was disputed at trial.  Thomas testified that Petitioner and Dixon

were arguing as they stepped into the foyer, that Dixon slammed Petitioner into a

window, and that shots were fired as Jude went to open the door.  Jude testified that

right after he opened the door, Petitioner pulled a gun and told Dixon "break yourself,"

Dixon jumped Petitioner, a struggle for the gun ensued, and shots were fired.  Jones

testified that both Thomas and Jude went into the foyer with Dixon prior to the shooting,

that Jones followed them, and when Jones opened the door, he saw Petitioner holding

a gun on Dixon who had his hands in the air, saying "hold on, hold on."

The detective who interviewed Petitioner after his arrest testified about

Petitioner's statements at trial.  Petitioner told the detective that when he asked to see

2

the marijuana, Dixon held out the sack, Petitioner reached for it, and Dixon swung at him and missed.  Petitioner then drew his gun and fired a warning shot at Dixon. Petitioner further stated that the shot enraged Dixon who jumped Petitioner and grabbed the barrel of the gun.  According to Petitioner, shots were fired during the struggle for the gun.

At sentencing, the state trial court merged the attempted aggravated robbery and second degree murder conviction into the first degree felony murder conviction and sentenced Petitioner to a term of life imprisonment with the Colorado Department of Corrections without any possibility of parole.  State Court R., Vol. 2 at 355.

Petitioner's conviction and sentence were affirmed by the Colorado Court of Appeals on May 24, 2001.  *See People v. Selectman*, No. 96CA1120 (Colo. Ct. App. May 24, 2001) (unpublished opinion), Pre-Answer Resp., Ex. E.  The Colorado Supreme Court denied certiorari review on February 25, 2002.  *Id.*, Ex. G.

On April 29, 2002, Petitioner filed a motion pursuant to Colorado Rule of Criminal Procedure 35(c), which was denied by the trial court.  On appeal, the Colorado Court of Appeals reversed the trial court's order on March 30, 2006, and remanded the case to the trial court for a determination of whether an evidentiary hearing was necessary. Pre-Answer Resp., Ex. I.  After remand, the trial court issued a written order denying Petitioner's Rule 35(c) motion on July 20, 2007.  *Id.*, Ex. B.  The Colorado Court of Appeals affirmed the trial court.  *See People v. Selectman*, No. 07CA1638 (Colo. Ct. App. Oct. 9, 2008) (unpublished opinion), Pre-Answer Resp., Ex. M.  The Colorado Supreme Court denied certiorari review on January 12, 2009.  *Id.*, Ex. O.

## II.  FEDERAL COURT PROCEEDINGS

Petitioner asserts the following ten claims in his Petition:

1.  The state courts misapplied the Colorado Children's Code by concluding that Petitioner's statements to police outside a parent's presence were admissible, in violation of the Fifth, Sixth, and Fourteenth Amendments.

2.  Petitioner's decision to waive his Fifth Amendment privilege against self-incrimination and respond to police questioning was invalid because the police failed to advise him that he could be tried as an adult.

3.  The trial court's self-defense instructions were erroneous and incomplete, in violation of the Fifth and Fourteenth Amendments.

4.  The trial court's jury instructions on attempted aggravated robbery and felony murder were erroneous and misleading, in violation of the Fifth, Sixth, and Fourteenth Amendments.

5.  The trial court's theory of defense instruction was incomplete, in violation of the Fifth, Sixth, and Fourteenth Amendments.

6.  The trial court erred in limiting Petitioner's cross-examination of three witnesses, in violation of the Sixth Amendment Confrontation Clause.

7.  The trial court's imposition of a life sentence without parole violated the Eighth Amendment and the Fourteenth Amendment Due Process Clause because Petitioner was a juvenile offender.  The life sentence also constituted a bill of attainder under U.S. Const. art. 1 § 3.

8.  Petitioner was denied his Sixth Amendment right to the effective assistance of counsel when counsel failed to present adequate evidence at the hearing in support of Petitioner's motion for a new trial and to argue all issues and points of law.

9.  Petitioner's Sixth Amendment right to counsel was violated because: (a) trial counsel labored under a conflict of interest in litigating the new trial motion; and (b) Petitioner's waiver of the conflict was invalid, as he was not adequately advised about counsel's difficulty in litigating the new trial motion on account of the conflict.

10.  Petitioner's Sixth Amendment right to a fair trial was violated when jurors considered information during deliberations that one of the jurors had been followed and cursed at by a person she believed to be a member of the victim's family, and that members of the victim's family had contacted and made negative comments to several of the jurors.

During the initial review of this action, Senior Judge Zita Leeson Weinshienk

entered an order (Doc. No. 10) dismissing the first and tenth claims as procedurally

barred.  Because Respondents conceded that the Petition was timely under 28 U.S.C.

§ 2244(d) and that Petitioner had exhausted available state remedies for claims two

through nine, those claims were drawn to a district judge and to a magistrate judge.

(*Id.*).  Accordingly, the Court considers the merits of claims two through nine below.

## III.  LEGAL STANDARDS

The Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA") provides

that an application for writ of habeas corpus may be granted only if the adjudication of

the claim (1) resulted in a decision that was contrary to, or involved an unreasonable

application of, clearly established federal law, as determined by the Supreme Court of

the United States; or (2) resulted in a decision that was based on an unreasonable

determination of the facts in light of the evidence presented in the state court

proceeding.  28 U.S.C. § 2254(d).

If a clearly established rule of federal law is implicated, the Court must determine

whether the state court's decision was contrary to or an unreasonable application of that

clearly established rule of federal law.  *See Williams v. Taylor*, 529 U.S. 362, 404-05

(2000).

> A state-court decision is contrary to clearly established federal law if: (a)
> "the state court applies a rule that contradicts the governing law set forth
> in Supreme Court cases"; or (b) "the state court confronts a set of facts
> that are materially indistinguishable from a decision of the Supreme Court
> and nevertheless arrives at a result different from [that] precedent."
> *Maynard [v. Boone]*, 468 F.3d [665,] 669 [(10th Cir. 2006)] (internal
> quotation marks and brackets omitted) (quoting *Williams*, 529 U.S. at
> 405). "The word 'contrary' is commonly understood to mean 'diametrically

different,' 'opposite in character or nature,' or 'mutually opposed.'"
*Williams*, 529 U.S. at 405 (citation omitted).

A state court decision involves an unreasonable application of clearly
established federal law when it identifies the correct governing legal rule
from Supreme Court cases, but unreasonably applies it to the facts. *Id.* at
407-08. Additionally, we have recognized that an unreasonable
application may occur if the state court either unreasonably extends, or
unreasonably refuses to extend, a legal principle from Supreme Court
precedent to a new context where it should apply.

*House v. Hatch*, 527 F.3d 1010, 1018 (10th Cir. 2008).

The Court's inquiry pursuant to the "unreasonable application" clause is an

objective one. *See Williams*, 529 U.S. at 409-10. "[A] federal habeas court may not

issue the writ simply because that court concludes in its independent judgment that the

relevant state-court decision applied clearly established federal law erroneously or

incorrectly. Rather that application must also be unreasonable." *Id.* at 411. "[A]

decision is 'objectively unreasonable' when most reasonable jurists exercising their

independent judgment would conclude the state court misapplied Supreme Court law."

*Maynard*, 468 F.3d at 671. "[O]nly the most serious misapplications of Supreme Court

precedent will be a basis for relief under § 2254." *Id.*

Claims of factual error are reviewed pursuant to 28 U.S.C. § 2254(d)(2). *See*

*Romano v. Gibson*, 278 F.3d 1145, 1154 n. 4 (10th Cir. 2002). Section 2254(d)(2)

allows a court to grant a writ of habeas corpus only if the state court decision was based

on an unreasonable determination of the facts in light of the evidence presented.

Pursuant to § 2254(e)(1), the Court must presume that the state court's factual

determinations are correct and the Petitioner bears the burden of rebutting the

presumption by clear and convincing evidence.

The Court applies the AEDPA deferential standard of review when a state court adjudicates a federal issue relying solely on a state standard that is at least as favorable to the applicant as the federal standard.  *See Harris v. Poppell*, 411 F.3d 1189, 1196 (10th Cir. 2005).  The Court likewise owes deference to the state court's result if the court reached the merits of the Petitioner's claim, even if the court did not analyze the claim under federal law.  *See Aycox v. Lytle*, 196 F.3d 1174, 1177-78 (10th Cir. 1999); *see also Harrington v. Richter*, 131 S.Ct. 770, 785 (2011) (reconfirming "that  § 2254(d) does not require a state court to give reasons before its decision can be deemed to have been "adjudicated on the merits.").

Finally, if the state courts failed to adjudicate a federal claim raised by the Petitioner, the Court consider the claim de novo and the deferential AEDPA standard of review does not apply.  *See Gipson v. Jordan*, 376 F.3d 1193, 1196 (10th Cir. 2004).

## IV.  DISCUSSION

### A.    Claim Two

Petitioner asserts in his second claim that his decision to waive his Fifth Amendment privilege against self-incrimination and respond to police questioning was invalid because the police failed to advise him that he could be tried as an adult. Petition at 6.

The Fifth Amendment privilege against self-incrimination applies to juveniles.  *In re Gault*, 387 U.S. 1, 55 (1967).  The police must therefore inform a juvenile suspect of his *Miranda* rights prior to subjecting him to custodial interrogation. *See Miranda v. Arizona*, 384 U.S. 436, 478-79 (1966) (requiring police to warn suspect "prior to any questioning that he has the right to remain silent, that anything he says can be used

7

against him in a court of law, that he has the right to the presence of an attorney, and

that if he cannot afford an attorney one will be appointed for him prior to any questioning

if he so desires"). The suspect may choose to waive his *Miranda* rights and talk to the

police. *Id.* at 444. Any waiver must be "made voluntarily, knowingly and intelligently."

*Id.* The Court's waiver inquiry is two-fold:

> First, the relinquishment of the right must have been voluntary in the
> sense that it was the product of a free and deliberate choice rather than
> intimidation, coercion, or deception. Second, the waiver must have been
> made with a full awareness of both the nature of the right being
> abandoned and the consequences of the decision to abandon it. Only if
> the "totality of the circumstances surrounding the interrogation" reveal both
> an uncoerced choice and the requisite level of comprehension may a court
> properly conclude that the *Miranda* rights have been waived.

*Moran v. Burbine*, 475 U.S. 412, 421 (1986). When the suspect is a juvenile, the

circumstances require an evaluation "of the juvenile's age, experience, education,

background, and intelligence, and into whether he has the capacity to understand the

warnings given him, the nature of his Fifth Amendment rights, and the consequences of

waiving those rights." *Fare v. Michael C.*, 442 U.S. 707, 725 (1979).

Petitioner filed a motion to suppress his statements to the police and the state

trial court held an evidentiary hearing. The trial court ruled that Petitioner received

adequate *Miranda* warnings and that his statements to the police were voluntary. State

Court R., May 16, 1995 Hearing Tr. at 82-83. The Colorado Court of Appeals

determined the following as to Petitioner's claim:

> Defendant also argues that, because he was not advised he could be
> prosecuted as an adult, the trial court erred in determining he had made a
> voluntary and knowing waiver of his *Miranda* rights. Again, we disagree.
> Defendant has not cited any authority to support his contention, and we have
> found none. Consequently, we will apply the well settled law concerning
> advisement and waiver.

8

> Although a defendant must be aware of and understand his or her constitutional rights, the police need not inform the defendant of information that is beyond the scope of *Miranda*, even if the information might affect the defendant's decision to talk to the police. A defendant's lack of knowledge of every possible circumstance that might affect his or her decision does not negate the constitutional validity of the defendant's statement. *People v. Pease*, 934 P.2d 1374 (Colo. 1997).
>
> Here, defendant's advisement fully comported with the requirements of *Miranda* and its progeny, and his waiver of his rights was voluntary, knowing, and intelligent. This was sufficient. *See People v. T.C.*, 898 P.2d 20 (Colo. 1995). We decline, in the absence of any authority, to require that a juvenile suspect must also be advised in connection with such a waiver that he or she could be prosecuted as an adult.

Pre-Answer Resp., Ex. E at 6-7.

The state appellate's court's resolution of Petitioner's claim was reasonable under governing Supreme Court law and is an appropriate application of *Fare's* totality of the circumstances test. First, the state court record establishes that Petitioner's waiver of his Fifth Amendment privilege was knowing and intelligent. The detective who interviewed Petitioner after he was arrested testified that she advised Petitioner that he was being charged with first degree homicide, read Petitioner and his mother each of the *Miranda* rights set forth on the police department's advisement of rights form, and ascertained that Petitioner and his mother understood each right. State Court R., April 18, 1995 Hearing Tr. at 190-198; *see also* People's Ex. 25. Petitioner signed the form indicating that he understood each right and that he wished to talk to the police. *Id.* at 198. His mother also signed the form. *Id.* This process was repeated at Petitioner's second police interview later the same day. *Id.*, April 19, 1995 Hearing Tr. at 98-103; *see also* People's Ex. 26. Petitioner's and his mother's signatures on the notification and waiver of rights forms are strong evidence of the validity of their waivers. *See North*

9

*Carolina v. Butler*, 441 U.S. 369, 373 (1979).  Furthermore, Petitioner's written statement that he prepared for the police demonstrates that Petitioner aptly reads and understands the English language. *See* Trial Court R., People's Ex. 28.

Moreover, there are no special factors to indicate that the then-sixteen-year-old Petitioner was unable to understand the nature of his actions.  The Court recognizes that parental assistance is an important factor in the totality of the circumstances analysis.  *See Gallegos v. Colorado*, 370 U.S. 49, 54 (1962) (noting that 14-year-old's youth prevented him from knowing the consequences of his admissions but stating "[a] lawyer or an adult relative or friend could have given the petitioner the protection which his own immaturity could not[;] [a]dult advice would have put him on a less unequal footing with his interrogators.").  The trial court found that Petitioner's mother was "present" during both police interviews because she was in the room with Petitioner at the time he was read his *Miranda* rights, for the duration of the first interview, and was outside the interview room and available to Petitioner for the second interview if he wanted to consult with her.  State Court R., May 16, 1995 Hearing Tr. at 81-82.   The trial court's factual findings regarding the presence and availability of Petitioner's mother at all relevant times are presumed correct under 28 U.S.C. § 2254(e) and have not been rebutted with any clear and convincing evidence from Petitioner.   These findings are supported by the state court record.  State Court R., April 18, 1995 Hearing Tr. at 188-200; April 19, 1995 Hearing Tr. at 79-92, 98-105, 107, 109-10, 148; *see also* People's Ex. 27.  Furthermore, Petitioner's mother was in the interview room while Petitioner prepared his written statement for the detectives.  State Court R., April 19, 1995 Hearing Tr. at 121.

Petitioner's allegation that the police failed to advise him that he could be tried as an adult is not significant to whether he made a knowing and intelligent decision to relinquish his Fifth Amendment privilege.  The record reflects that he understood that he had the right to remain silent and that anything he said could be used against him. Therefore, his waiver was constitutionally adequate.  *See Spring*, 479 U.S. at 574  ("The Constitution does not require that a criminal suspect know and understand every possible consequence of a waiver of the Fifth Amendment privilege."); *see also United States v. Hernandez*, 93 F.3d 1493, 1503 (10th Cir. 1996) (concluding that defendant's waiver of Fifth Amendment privilege was sound because he was advised of  his "basic rights, which is all that is required") (citing *Spring*).

The state appellate court's determination that Petitioner's waiver of his Fifth Amendment privilege was voluntary is also reasonable in light of the evidence presented to the state court.  There is nothing in the trial court record to indicate any coercion or overreaching by the detectives at Petitioner's first or second interviews. State Court R., April 18, 1995 Hearing Tr. at 199; April 19, 1995 Trial Tr. at 12-13, 89, 95, 123, 126.  Absent evidence that Petitioner's "will [was] overborne and his capacity for self-determination critically impaired" because of coercive police conduct, his waiver of his Fifth Amendment privilege was voluntary under *Miranda*.  *Id.* (internal quotations and citations omitted); *see also Fare*, 442 U.S. at 726-27 (concluding 16½-year-old knowingly and voluntarily waived his Fifth Amendment rights because, inter alia, "[h]e was not worn down by improper interrogation tactics or lengthy questioning or by trickery or deceit").

Accordingly, the Colorado Court of Appeals' determination that Petitioner's waiver of his Fifth Amendment privilege was knowing, intelligent and voluntary was consistent with applicable federal law.  Petitioner is therefore not entitled to federal habeas relief for his second claim.

**B.      Claims Three, Four and Five**

Petitioner's third, fourth and fifth claim asserts various errors of constitutional magnitude in the jury instructions given at his trial.

"[T]he Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged."  *In re Winship*, 397 U.S. 358, 364 (1970).  As a general rule, errors in jury instructions in a state criminal trial are not reviewable in federal habeas corpus proceedings, unless they are so fundamentally unfair as to deprive petitioner of a fair trial and to due process of law."  *Tyler v. Nelson,* 163 F.3d 1222, 1227 (10th Cir. 1999) (quoting *Nguyen v. Reynolds*, 131 F.3d 1340, 1357 (10th Cir. 1997)). However, not every "ambiguity, inconsistency, or deficiency" in a jury instruction renders the instruction constitutionally infirm.  *Middleton v. McNeil,* 541 U.S. 433, 437 (2004).  "An omission, or an incomplete instruction, is less likely to be prejudicial than a misstatement of the law." *Henderson v. Kibbe*, 431 U.S. 145, 154 (1977).  "To establish a due process violation, the petitioner must show both that the instruction was ambiguous and that there was "'a reasonable likelihood'" that the jury applied the instruction in a way that relieved the State of its burden of proving every element of the crime beyond a reasonable doubt.  *Estelle v. McGuire*, 502 U.S. 62, 72 (1991) (quoting *Boyde v. California*, 494 U.S. 370, 380 (1990)); *Boyde*, 494 U.S. at 380 (where

instruction is ambiguous, court's inquiry is whether there is "a reasonable likelihood that the jury has applied the challenged instruction in a way that prevents the consideration of constitutionally relevant evidence."). "[T]he proper inquiry is not whether the instruction 'could have' been applied in an unconstitutional manner, but whether there is a reasonable likelihood that the jury *did* so apply it." *Victor v. Nebraska*, 511 U.S. 1, 6 (1994) (emphasis in the original) (finding no reasonable likelihood that jury understood instructions to allow convictions based on proof insufficient to meet the beyond a reasonable doubt standard).  A jury instruction may not be examined in artificial isolation, but must be viewed in the context of the overall charge.  *Estelle*, 502 U.S. at 72-73; *Boyde*, 494 U.S. at 378; *Middleton,* 541 U.S. at 437.

With the foregoing governing legal principles in mind, the Court considers claims three, four and five below to determine whether Petitioner has demonstrated an entitlement to federal habeas relief.

1.    *Claim Three*

Petitioner asserts in his third claim that the trial court's self-defense instructions were erroneous and incomplete, in violation of the Fifth and Fourteenth Amendments. Specifically, Petitioner argues that the trial court erred by: (a) refusing to instruct the jury that he was entitled to use deadly physical force if the other person was committing or reasonably appeared to commit robbery or assault; (b) failing to instruct the jury on the use of non-deadly physical force; (c) instructing the jury on the initial aggressor limitation on self-defense; and, (d) failing to instruct the jury that self-defense is a defense to felony murder and the predicate felony of attempted aggravated robbery. Petition at 6 and 6a.

The Colorado Court of Appeals rejected Petitioner's claim based on the following reasoning:

> Defendant argues that, because the instructions on self-defense were erroneous and incomplete, reversal is required.  Defendant's arguments are predicated on his assumption that where, as here, the issue is whether he meant to commit robbery and attempted such a robbery (culminating in the victim's death) or whether he was acting in self-defense to an assault when he killed the victim, self-defense instructions are applicable to both scenarios.  Because we disagree with defendant's assumption, we reject his arguments.

> First, we note that defendant's conviction is for felony murder predicated upon an attempted aggravated robbery. Self-defense is not an affirmative defense to either felony murder, *People v. Renaud*, 942 P.2d 1253 (Colo. App. 1996), or to aggravated robbery. *People v. Beebe*, 38 Colo. App. 80, 557 P.2d 840 (1976). While the jury also found defendant guilty of second degree murder, and the self-defense instructions are applicable to that charge, defendant's conviction of that offense merged into his conviction on the first degree murder count. Thus, because any error in the self-defense instructions related to an offense of which defendant does not stand convicted, the issue is moot and not subject to review. *See Moore v. People*, 925 P.2d 264 (Colo. 1996).

> Second, we do not agree with defendant that the instructions on self-defense had any bearing on the attempted robbery charge. As a division of this court recognized in *People v. Beebe*, *supra*, 38 Colo. App. at 81, 557 P.2d at 841 (citations omitted), "both the putting in fear and the taking of property constitute the gist of the offense of robbery. These elements of the offense are inseparable. Self-defense cannot justify the taking of a thing of value from the person or presence of another, and the lawfulness of the force used to accomplish the taking is immaterial."

> Here, defendant's theory of defense was that he was not guilty of attempted robbery because he only "reached for/grabbed" the bag of marijuana. At that point, he argued, he did not mean to take the marijuana by the use of force, threats, or intimidation and, consequently, was not attempting to commit aggravated robbery. It was only "after" the victim swung at defendant that defendant "pulled a gun in an effort to defend himself."

> The jury was obliged to decide between two factually and logically discrete theories: 1) that defendant meant to rob the victim, or 2) that defendant did not mean to rob the victim and only defended himself from an assault. The

> court rejected defendant's attempt to meld these theories into one, i.e.,
> that the level of the victim's resistance to defendant's attempt to grab the
> marijuana gave rise to defendant's need to defend himself. Rather, the
> instructions correctly gave the jury a clear choice of one version or the
> other.

Pre-Answer Resp., Ex. E at 10-12.

The Court of Appeals' determination that Petitioner was not entitled to a self-defense instruction to the charges of felony murder and attempted aggravated robbery under Colorado law is not reviewable in this federal habeas proceeding.  *See Johnson v. Mullin*, 505 F.3d 1128, 1141-1142 (10th Cir. 2007) (rejecting habeas petitioner's claim that required federal court to interpret state law because "'it is not the province of a federal habeas court to reexamine state court determinations on state-law questions,'" quoting *Estelle*, 502 U.S. at 67-68)).  The Constitution does not require a State to recognize self-defense as an affirmative defense to felony murder where the predicate felony is robbery or attempted robbery.  *See Rastafari v. Anderson*, 278 F.3d 673, 693 (7th Cir. 2002); *see also Gilmore v. Taylor*, 508 U.S. 333, 344 (1993) (rejecting argument that constitutional right to present a complete defense includes right to have the jury consider an affirmative defense).

Moreover, this Court does not reach the issue of whether there is "a reasonable likelihood" that the jury applied the self-defense instruction in a way "that relieved the State of its burden of proving every element of the crime beyond a reasonable doubt," or that "prevent[ed] the consideration of constitutionally relevant evidence," *Boyde,* 494 U.S. at 380, because any errors in the self-defense instructions pertained only to the second degree murder conviction.   As such, Petitioner cannot show that any errors in the self-defense instructions infected his trial such that his conviction for first degree

15

murder-felony murder violates due process.  The Court finds that the state appellate court's determination was not contrary to or an unreasonable application of federal law and Petitioner is not entitled to federal habeas relief for his third claim.

      2.    *Claim four*

In claim four, Petitioner asserts that the instructions on attempted aggravated robbery were erroneous and misleading, in violation of the Fifth, Sixth, and Fourteenth Amendments, because the trial court: (a) failed to instruct the jury that for a person to be guilty of aggravated robbery the taking of a thing of value must be unlawful; (b) instructed the jury in such a way as to remove from its consideration: whether the thing involved was a "thing of value"; and, whether the victim was a "person being robbed," and, if so, whether the thing of value was taken "from the person or presence" of another; and, (c) the definition of "substantial step" was not set forth separately in the instructions, but was instead included within the definitional instruction of "attempt." Petition at 6b.  He further asserts that the definition of "attempt" allowed the jury to find that mere possession of a gun constituted a "substantial step."  *Id.* at 6b1. Petitioner maintains that because attempted aggravated robbery was the predicate felony for his first degree murder conviction, the first degree murder instruction was also flawed and his conviction is therefore invalid.  *Id.*

The Court first addresses the alleged deficiencies in the aggravated robbery instruction.  The instruction defining the offense of aggravated robbery read:

    1. That the defendant,
    2. in the state of Colorado, at or about the date and place charged,
    3. knowingly,
    4. took anything of value,
    5. from the person or presence of [the victim],

     6. by the use of force, threats, or intimidation, and

     7. during the act of robbery or the immediate flight therefrom,

     8. knowingly,

     9. put the person robbed, or any other person, in reasonable fear of death or
bodily injury,

    10. by the use of force, threats, or intimidation,

    11. with a deadly weapon.

State Court R., Inst. No. 17 at 184.

The appellate court reviewed Petitioner's claim for plain error–whether the error

so undermined the fundamental fairness of the trial that the reliability of Petitioner's

conviction was cast into doubt.  Pre-Answer Resp., Ex. E at 12 (state case law citations

omitted).  The Colorado Court of Appeals rejected Petitioner's arguments because the

instruction comported with Colorado law and the evidence presented at trial:

### 1. Thing of Value

Pursuant to § 18-1-901(3)(r), C.R.S. 2000: "'Thing of value' includes real
property, tangible and intangible personal property, contract rights, choses
in action, services, confidential information, medical records information,
and any rights of use or enjoyment connected therewith." The trial court
instructed the jury that: "'Thing of Value' includes marijuana."

It was uncontested that the marijuana met the definition of "thing of value."
Indeed, defendant's theory of the case instruction stated that he had
"intended to purchase a small quantity of marijuana from [the victim]."
(emphasis added). Because one does not deliberately "purchase" an item
with no value, defendant's argument must fail.

### 2. Any Other Person

We also reject defendant's assertion that the trial court's inclusion of the
phrase "any other person" was error because it did not require the jury to
find that the victim was the person being robbed.

There was no evidence presented or theory proffered to establish that
defendant's actions were directed at anyone other than the victim. At
most, this language was superfluous and certainly does not rise to the
level of plain error. *See People v. Rodriguez*, 914 P.2d 230 (Colo. 1996).

17

3. Presence of Another

Defendant further argues the trial court erred in giving an instruction
defining when property is taken from the "presence of another." He
maintains that, because the phrase "presence of another" was not defined
by statute, the trial court should not have provided a definition, and that
the definition given allowed the jury to convict him even if it believed the
victim was handing over the marijuana as part of an agreement. We
disagree.

The trial court instructed the jury that: "Property is taken from the
'presence of another' when it is so within the victim's reach, inspection, or
observation that he would be able to retain control over the property but
for the force, threats, or intimidation directed by the perpetrator against the
victim."

This instruction is identical to the definition adopted by the supreme court
in *People v. Bartowsheski*, 661 P.2d 235 (Colo. 1983). And, in *People v.
Benton*, 829 P.2d 451 (Colo. App. 1991), a division of this court rejected
an argument substantially similar to defendant's.

Moreover, because the instruction itself required proof that the perpetrator
used force, threats, or intimidation, we reject defendant's assertion that
the instruction would encompass the voluntary handing over of the
marijuana as part of an agreement.

*Id.* at 13-15.

The state appellate court did not address specifically Petitioner's contention that

the trial court failed to instruct the jury that for a person to be guilty of aggravated

robbery the taking of a thing of value must be unlawful.  Accordingly, the Court reviews

the claim de novo to determine whether the omission fatally infected the trial so as to

deprive Petitioner of his right to due process. *See Gipson*, 376 F.3d at 1196.

Petitioner argues that the instruction as given allowed the jury to find him guilty of

attempted aggravated robbery even if the jurors believed he was taking the thing of

value (the baggie of marijuana) as part of a pre-arranged deal.  This assertion ignores

the Supreme Court's directive that jury instructions must be read as a whole.  *See*

*Boyde*, 494 U.S. at 378; *Estelle*, 502 U.S. at 72-73.   The jury was instructed, in part, that the elements of aggravated robbery included the Petitioner's conduct in knowingly taking anything of value from the person or presence of the victim by the use of force, threats or intimidation.   It would have been superfluous in the context of the overall charge to further instruct the jury that the taking of the marijuana must have been unlawful.   Moreover, the instruction comports with the Colorado criminal statutes.   *See* § 18-4-301(1), C.R.S. (defining elements of robbery); *see also* § 18-4-302(1) (defining elements of aggravated robbery).   The Court finds that the instruction was not ambiguous, and, therefore, the failure to instruct the jury that the taking of the thing of value must have been unlawful did not deprive Petitioner of his due process right to a fair trial.

The state appellate court's factual findings that the evidence supported the "thing of value" and "person being robbed" elements of the aggravated robbery instruction are presumed correct under 28 U.S.C. § 2254(e)(1) are supported by the state court record.   *See* State Court R., Vol. I, Inst. No. 20, at 188; People's Ex. 28.   Petitioner has failed to rebut that presumption with any clear and convincing evidence to the contrary.   *See* 28 U.S.C. § 2254(e)(1).

Petitioner also objects to the instruction defining when "Property is taken from the 'presence of another.'" Petitioner argues that the instruction precluded the jury from accepting his version of events.   However, as the state appellate court determined, the instruction required the jury to find specifically that Petitioner used force, threats or intimidation against the victim.   At all times the jurors were free to accept Petitioner's version of events.   The Court cannot find that the jury's decision to convict was the

19

result of any defect in the instructions on aggravated robbery or in the definitional

instructions pertaining to the same.

Petitioner also challenges the instruction defining the element of "substantial

step" for the charge of attempted aggravated robbery because it was included within the

definitional instruction of "attempt."  He further asserts that the definition of "attempt"

allowed the jury to find that mere possession of a gun constituted a "substantial step."

*See* Petition at 6b1.

The instruction on "attempt" stated:

"'Attempt' as used in the instructions requires a substantial step toward the
commission of that offense. A substantial step is any conduct, whether
act, omission, or possession, which is strongly corroborative of the
firmness of the actor's purpose to complete the commission of the
offense."

State Court R., Vol 1, Inst. No. 19, at 186.

The Colorado Court of Appeals determined:

Defendant asserts the definition of "substantial step" was "obscured"
because it was included in the definition of "attempt." We find no error.
Inclusion of the definition of "substantial step" in the definition of "attempt"
is not so confusing as to lead to the conclusion that the jury failed to
understand the instructions. Moreover, the definition is identical to that set
forth in CJI-Crim. No. 8:01 (1993).

Thus, the definition was not obscured, and, because defendant has
presented nothing to overcome the presumption that the jury understood
and heeded the trial court's instructions, we reject his argument. See
*People v. Moody*, 676 P.2d 691 (Colo. 1984).

Pre-Answer Resp., Ex. E at 15-16.

Even if the placement of the instruction defining "substantial step" within the

definitional instruction of attempt rendered the attempted robbery instruction ambiguous,

the Court finds that there is no reasonable likelihood that the jury applied the

instructions on attempted aggravated robbery in a way that relieved the State of its burden of proving every element of the crime beyond a reasonable doubt. *See Boyde*, 494 U.S. at 380. The evidence at trial was that Petitioner and Dixon went into the foyer of the apartment building to complete the drug transaction. Witness Carlos Jones testified that he saw Petitioner pointing a gun at Dixon while Dixon was holding his hands up in the air saying "hold on, hold on," as he backed away. As Jones closed the door, he heard shots fired. State Court R., June 21, 1995 Trial Tr. at 40-52, 70-72. Another witness, Sean Jude, testified that he followed Petitioner and Dixon into the foyer, that Petitioner pulled out a gun and said to Dixon, "break yourself," that Dixon responded "I can't believe this," and rushed at Petitioner. During the ensuing struggle for the gun, shots were fired. *Id.*, June 29, 1995 Trial Tr. at 205-212. Although there was conflicting testimony presented by other witnesses as to what happened inside the foyer, the jury resolved these credibility issues against the Petitioner. The testimony of two witnesses supports the element of attempt that Petitioner engaged in conduct, other than mere possession of a gun, that was strongly corroborative of the firmness of his purpose to complete the commission of aggravated robbery.

Petitioner has failed to establish that the trial court's failure to give a separate instruction defining "substantial step" rendered his trial fundamentally unfair in violation of due process. Accordingly, the Court finds that the state appellate court's resolution of Petitioner's claim was reasonable under applicable Supreme Court law and therefore Petitioner is not entitled to federal habeas relief for his fourth claim.

3.    *Claim five*

Petitioner asserts in claim five that the trial court inadequately instructed the jury on Petitioner's theory of defense, in violation of the Fifth, Sixth, and Fourteenth Amendments, by: (a) injecting disputed facts into the theory of defense instruction; and (b) refusing to incorporate critical aspects of self defense from the standpoint of the Petitioner.  Petition at 6c.

"[T]he Constitution guarantees criminal defendants 'a meaningful opportunity to present a complete defense.'"  *Gilmore*, 508 U.S. at 343 (internal quotations omitted). However, in *Gilmore,* the Supreme Court rejected the defendant's argument that "the right to present a defense includes the right to have the jury consider it" because "such an expansive reading of our cases would make a nullity of the rule . . . that instructional errors of state law generally may not form the basis for federal habeas relief.  *Id.* at 344 (citing  *Estelle*); *see also Newton v. Million*, 349 F.3d 873, 879 (6th Cir. 2003) ("We have found no Supreme Court case which holds that a criminal defendant's right to present a defense includes the right to a specific jury instruction").

Petitioner tendered the following theory of defense instruction, which was modified by the trial court:

> It is Christopher Selectman's contention that he did not intend or attempt to rob McKinley Dixon on February 25, 1994.  Instead, Christopher Selectman, Sean Jude, and Isaiah Thomas went to the Albertson's parking lot intending only to purchase a small quantity of marijuana from McKinley Dixon.
>
> Christopher Selectman further contends that after fruitless efforts to weigh the baggie of marijuana, which appeared to be "short," he was attacked by McKinley Dixon in the foyer of the International Apartments.  After McKinley Dixon swung at Christopher Selectman, he (Christopher) pulled

a gun out of his coat in an effort to defend himself.  In the ensuing struggle, Mr. Dixon was shot.

Mr. Selectman further contends that he used deadly force in light of the circumstances, including the size of McKinley Dixon and his belief that either McKinley Dixon or Carlos Jones, was armed with a weapon.

State Court R., Vol. 4, Mot. to Supp. Rec. on Appeal, Def.'s Ex. AAAA, Def.'s Tendered

Inst. No. 1.

The Colorado Court of Appeals resolved Petitioner's claim as follows:

Defendant also asserts the trial court erred by modifying his tendered theory of defense instruction. He argues that the trial court injected disputed facts into the instruction and refused to incorporate elements of self-defense. We do not agree.

A jury instruction embodying a defendant's theory of the case must be given if the record contains any evidence to support it. *People v. Coria*, 937 P.2d 386 (Colo. 1997). However, the trial court has substantial discretion in formulating the language of instructions, so long as they are correct statements of the law and adequately cover the issues presented. *People v. Davis*, 935 P.2d 79 (Colo. App. 1996). In determining whether the jury has been adequately informed of the defendant's theory of defense, all the instructions must be considered as a whole. *People v. Tippett*, 733 P.2d 1183 (Colo. 1987).

The theory of defense instruction provided:

It is [defendant's] contention that he did not intend to or attempt to rob [victim] on February 25, 1994. Instead, [defendant] . . . went to the Albertson's parking lot intending only to purchase a small amount of marijuana from [victim].

[Defendant] further contends that after fruitless efforts to weigh the baggie of marijuana, which appeared to be 'short,' [defendant] reached for/grabbed for the bag of marijuana. Thereafter, he was attacked by [victim] in the foyer of the International Apartments ([victim] swung at [defendant]) and [defendant] pulled a gun in an effort to defend himself. In the ensuing struggle, [victim] was shot.

> [Defendant] further contends that he used deadly force in
> light of the circumstances, including the size of [victim and]
> his belief that . . . [victim] had a weapon. (emphasis added).

> Defendant argues the trial court's inclusion of the emphasized language,
> over his objection, requires reversal because it allowed the jurors to find
> him guilty if they believed he was merely reaching for the bag of marijuana
> when the victim tried to hit him.

> However, defendant's own statements to police included an admission
> that he had "reached or grabbed" for the bag of marijuana before the
> victim swung at him. The instruction stated that defendant did not intend to
> or attempt to rob the victim and that he pulled a gun only to defend
> himself. Thus, because the instruction accurately reflected the evidence
> as presented at trial, inclusion of the challenged language was not an
> abuse of discretion. *See People v. Coria*, supra.

> We also reject defendant's argument to the extent he asserts that
> elements of self-defense were not included in the theory of defense
> instruction. Not only did the jury receive a separate instruction on
> self-defense, but the theory of defense instruction also informed the jury
> that defendant acted as he did because of the victim's size and
> defendant's belief that the victim had a weapon.

> For these reasons, we find no error.

Pre-Answer Resp., Ex. E at 18-19.

The only material difference between the instruction tendered by Petitioner and

the instruction given by the trial court is the addition of the language in the second

paragraph that after Petitioner "reached for/grabbed for the bag of marijuana," he was

attached by the victim.  The state appellate court's factual finding that this statement

was supported by the evidence at trial is presumed correct and is corroborated by the

state court record.  *See* State Court R., April 19, 1995 Motions Hearing at 111; People's

Ex. 28.  Petitioner has not pointed to any clear and convincing evidence to establish

otherwise.  *See* 28 U.S.C. § 2254(e)(1).  Moreover, contrary to Petitioner's contention,

elements of self-defense were included in the final paragraph of the theory of defense

instruction, which was almost identical to the paragraph in the instruction tendered by the defense.  Petitioner has therefore failed to persuade this Court that the theory of defense instruction somehow rendered his trial fundamentally unfair in violation of due process.  As such, Petitioner is not entitled to federal habeas relief for his fifth claim.

**C.     Claim Six**

Petitioner asserts in claim six that the trial court erred in limiting his cross-examination of three witnesses.  Specifically, the trial court precluded Petitioner from asking: (1) witness Isaiah Thomas about the specific nature of the threats made against him by the victim's friends; (2) the detective who interviewed Petitioner about whether she advised Petitioner or his mother that Petitioner could be charged as an adult; and, (3) from questioning witness Sean Jude about the fact that he was arrested for his failure to appear at a preliminary hearing in this case.  Petition at 6c and 6c1.

The Confrontation Clause of the Sixth Amendment guarantees the right of an accused in a criminal prosecution "to be confronted with the witnesses against him." U.S. Const. amend. VI.  "The main and essential purpose of confrontation is to secure for the opponent the opportunity of cross-examination." *Davis v. Alaska*, 415 U.S. 308, 315-16 (1974) (internal quotation marks omitted).  The Supreme Court has recognized that "the cross-examiner is not only permitted to delve into the witness' story to test the witness' perceptions and memory, but [is also] . . . allowed to impeach, i.e., discredit, the witness." *Id.* at 316.  Therefore, the constitutionally protected right of cross-examination includes exposure of a witness' motivation in testifying. *Id.* at  316-317. *See also Smith v. State of Illinois*, 390 U.S. 129, 131-32 (1968) (holding that petitioner's confrontation rights were violated when the trial court denied him the right to ask the

25

principal prosecution witness either his name or where he lived, after the witness admitted that the name he had first given was false).  However, the Confrontation Clause does not prevent the trial court from imposing any limits on cross-examination. *See Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986).  Trial judges have wide discretion "to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." *Id.*  "[T]he Confrontation Clause guarantees an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *Delaware v. Fensterer*, 474 U.S. 15, 20 (1985) (per curiam) (emphasis in original).  Even so, a trial court may violate a defendant's confrontation rights by prohibiting all inquiry into an event that "a jury might reasonably have found furnished the witness a motive for favoring the prosecution in his testimony."  *Van Arsdall*, 475 U.S. at 679.

The Colorado Court of Appeals applied the correct legal standards in analyzing Petitioner's Confrontation Clause claims.  *See* Pre-Answer Resp. Ex. E at 22 (relying on state case law citing *Davis, Van Arsdall* and *Fensterer*).  Accordingly, under the AEDPA standard of review Petitioner is not entitled to federal habeas relief unless the state appellate court's resolution of his claims constituted an unreasonable application of those Supreme Court cases.  28 U.S.C. § 2254(d)(1).

1.    *threats against witness*

Petitioner first claims that his confrontation rights were violated when the trial court refused to allow him to question witness Isaiah Thomas about the specific nature

of the threats made against Thomas by the victim's friends after the shooting.  He

asserts that the Court excluded evidence that the victim's friends threatened to "kick

[Thomas's] ass," and that Thomas took these threats so seriously that he moved out of

town.  Petition at 6c.

The state appellate court rejected Petitioner's claim on the following grounds:

Defendant first argues the trial court erred by not allowing him to ask a
witness about the substance of threats he had received from the victim's
friends and the witness' reaction to those threats. We disagree.

The trial court determined:

[T]he extent to which, if any, he was threatened as it relates
to this case is the type of credibility assessment that the jury
should make. This is, as to whether he's credible or not and I
will allow limited questioning by both sides as to that issue
with this specific understanding: You may ask as to whether
it was threats, you may ask whether he knew the people
making the threats were friends of either [victim] or
[defendant]. There will be no reference to gang activity
whatsoever and because of the fact that we're crawling into
areas which in my mind if we expand unreasonably on this
could take this trial far afield, I will not allow the specific
nature of threats to be asked.

We agree with the trial court that information concerning the threats, in
general, was adequate for the jury to assess the credibility of the witness.

There is no indication that testimony concerning the specific nature of the
threats was relevant to the issues in this case or that exploration of the
substance of the threats would bear one way or the other on the credibility
of the witness. Thus, this limitation on cross-examination was neither an
abuse of discretion nor a denial of defendant's right to confrontation.

Pre-Answer Resp., Ex. E at 23 (quoting State Court R., June 27, 1995 Trial Tr. at 79-

80).

At trial, the defense made an offer of proof outside the presence of the jury that

Thomas had received threats from friends of the victim a few days after the shooting

and that he also received threats from gang members in an unrelated pending homicide case, which resulted in him moving away from the Denver area.  State Court R., June 27, 1995 Trial Tr. at 70-78.   Before trial, the trial court ruled that evidence of gang activity was inadmissible.  State Court R., Vol. 1 at 83-84.  Based on the vagueness of the offer of proof, the trial court's restriction on cross-examination to prevent questioning which may have prompted a response from the witness about irrelevant and potentially confusing matters concerning unrelated gang activity did not run afoul of the Confrontation Clause under *Van Arsdall*.  Petitioner was allowed to inquire generally about threats Thomas received from the victim's friends, which allowed him to present to the jury the possible bias and motive of the witness.  The state appellate court's determination that no Sixth Amendment violation occurred therefore comported with federal law and Petitioner is not entitled to federal habeas relief.

2.    *failure to advise Petitioner that he could be charged as an adult*

Next, Petitioner claims that his confrontation rights were violated when the trial court precluded counsel from asking the detective who interviewed Petitioner whether she advised Petitioner or his mother that Petitioner could be charged as an adult.

The trial court ruled that the question was not relevant because the district attorney's office made the decision whether to prosecute Petitioner as an adult and that decision had not been made at the time of Petitioner's police interview.  State Court R., June 28, 1995 Trial Tr. at 240-241.

The Colorado Court of Appeals rejected Petitioner's claim on the following grounds:

> Defendant also maintains the trial court erred by limiting his
> cross-examination of the detective who took his statement. He argues he

28

should have been allowed to inquire whether he or his mother had been advised that he could be charged as an adult. We disagree.

The trial court disallowed that line of inquiry, determining that, because the filing of charges is within the discretion of the prosecution, discussions concerning police advisements of possible charges raised additional questions about other consequences not relevant to the issues in the case. We agree with this reasoning. *See Vega v. People, supra.*

Pre-Answer Resp., Ex. E at 24.

Petitioner argues that he was entitled to cross-examine the detective about her failure to advise Petitioner that he could be tried as an adult because the question was within the scope of the prosecution's direct examination about the general advisement of rights she gave Petitioner before taking his statement. Petition at 6c1. Petitioner asserts that the restriction violated his right to meaningful cross-examination. The Court finds, however, that the state appellate court's decision was sound under *Davis*, *Van Arsdall* and *Fensterer*. Inquiry into the detective's failure to advise Petitioner that he could be tried as an adult was not relevant to the reliability or credibility of the detective's testimony. Furthermore, the trial court did not preclude an entire area of cross-examination. Counsel was free to question the detective about the *Miranda* advisement she gave Petitioner and his mother during both the first and second interviews and the circumstances surrounding those interviews. State Court R., June 28, 1995 Hearing Tr. at 227-251; June 29, 1995 Hearing Tr. at 140-181. The singular restriction the trial court imposed on Petitioner's cross-examination of the detective did not run afoul of the Sixth Amendment. Accordingly, Petitioner is not entitled to habeas relief for his claim.

3. *Arrest warrant issued for witness*

Petitioner also claims that the trial court violated his right to confrontation by precluding trial counsel from questioning prosecution witness Sean Jude about a warrant issued for Jude's arrest after he failed to appear for a preliminary hearing in Petitioner's case.

At trial, the prosecution moved to exclude evidence that Jude had been arrested. State Court R., June 29, 1995 Trial Tr. at 240-41. The trial court ruled that defense counsel could not question Jude about his arrest, but could ask Jude if he was required to post a bond to assure his appearance in court for trial, and if so, the amount and type of bond because such matters were probative of Jude's general credibility. *Id.* at 243-44.

The state appellate court determined the following as to Petitioner's claim:

Defendant argues the trial court erred in limiting his cross-examination of a witness who had been arrested for failing to appear at an earlier hearing in this case. We find no error.

The trial court permitted defendant to ask the following questions: "Was he required to post bond? Does he continue to have to be on bond? Is it a professional or surety bond in the sum of $2,000 for his prior failure to appear?"

Contrary to defendant's contention that evidence of the witness' arrest was necessary to show his motive and bias, we agree with the trial court that the inquiry permitted here "is appropriate to indicate for whatever purpose the jury chooses to determine the mental status of the witness in terms of his willingness or non-willingness to appear, and they can gain that as part of the general credibility instructions."

Thus, we will not disturb the ruling. *See Vega v. People, supra.*

Pre-Answer Resp., Ex. E at 24-25.

Jude's testimony was important to the prosecution's case. Jude testified that Petitioner and the victim went into the foyer of the apartment building to complete the

drug transaction and that Petitioner pointed a gun at the victim and said "break yourself" (slang for "give me it"), right before the victim was shot.  *See* State Court R., June 29, 1995 Trial Tr. at 210.  However, there is nothing in the state court record to support an inference that evidence of Jude's arrest after he failed to appear at a court hearing showed his motive and bias to testify for the prosecution, or somehow affected the reliability of his trial testimony.  Petitioner does not allege, must less demonstrate, that Jude received any favorable treatment from the prosecutor in exchange for his trial testimony.

Moreover, the jury had sufficient information to assess the reliability of Jude's testimony, even with the limitation imposed by the trial court on cross-examination. Petitioner's counsel was allowed to as the witness if he was present in court on a surety bond and the jury was allowed to draw any appropriate inferences about the witness' general credibility from Jude's affirmative response.  *See* State Court R., June 29, 1995 Trial Tr. at 322-23.  In addition, counsel subjected Jude to a thorough and lengthy cross-examination concerning each and every inconsistency between Jude's trial testimony and his testimony in earlier court hearings, his statements to the police, his statements to the defense investigator, and his statements to other witnesses immediately after the shooting to impeach his general credibility.  *Id.* at 247-300, 318-232.  The trial court's limitation on cross-examination did not significantly impede counsel's ability to challenge the "believability of [the] witness and the truth of his testimony." *Davis*, 415 U.S. at 316.  Accordingly, the Court finds that the state appellate court's resolution of Petitioner's claim was not an unreasonable application of *Davis* or *Van Arsdall*.  Petitioner is not entitled to federal habeas relief.

31

**D**.     **Claim Seven**

In claim seven, Petitioner challenges his sentence to life imprisonment without parole as a juvenile offender as violative of the Eighth Amendment and the Fourteenth Amendment Due Process Clause.  Petition at 6c1-c2.  He further claims that his sentence constitutes a bill of attainder under U.S. Const. art. 1 § 3.  *Id.*

The Eighth Amendment's ban on cruel and unusual punishment includes the principle "that punishment for crime should be graduated and proportioned to [the] offense." *Weems v. United States*, 217 U.S. 349, 367 (1910).  This gross disproportionality principle applies to sentences for terms of years.  *Lockyer v. Andrade*, 538 U.S. 63, 72 (2003).

The state appellate court rejected Petitioner's claim because he was convicted of first degree murder as an adult, pursuant to Colorado law, and the Eighth Amendment does not prohibit life sentences imposed on adult offenders for first degree murder convictions.  Pre-Answer Resp. Ex. M at 7.

However, the state appellate court's decision failed to grasp the precise contours of Petitioner's federal claim.  Petitioner argued to the Colorado Court of Appeals that sentencing juveniles to life without parole is unconstitutional under the Eighth Amendment and the Fourteenth Amendment Due Process Clause.  Pre-Answer Resp., Ex. K at 3.  In his federal Petition, he likewise challenges the constitutionality of the sentencing practice as applied categorically to juvenile offenders.  *See* Petition at 6c1. Because the state appellate court did not reach the merits of Petitioner's constitutional claim, this Court addresses the claim de novo.  *See Gipson*, 376 F.3d at 1196.

To be entitled to federal habeas relief for his claim, the principle of federal law that Petitioner advances must have been clearly established by the Supreme Court at the time of the state court judgment.  *See* 28 U.S.C.  § 2254(d).  In 2002, when Petitioner's conviction was final, the Supreme Court did not recognize an offender's age at the time of the offense as a categorical restriction on the imposition of a term-of-years sentence.  In *Roper v. Simmons*, 543 U.S. 551, 578 (2005), the Supreme Court over-ruled its plurality decision in *Stanford v. Kentucky*, 492 U.S. 361, 380 (1989), and held that it is cruel and unusual punishment for the State to impose the death penalty upon juvenile offenders who commit murder.  Later, in *Graham v. Florida*, 130 S.Ct. 2011, 2034 (2010), the Supreme Court held that the Eighth and Fourteenth Amendments prohibit the imposition of a term of life imprisonment without parole upon juveniles who commit non-homicide offenses.  However, *Graham* was decided last year and is therefore not applicable to Petitioner's claim on federal habeas review.  *See Williams*, 529 U.S. at 380 (federal habeas courts "must deny relief that is contingent upon a rule of law not clearly established at the time the state conviction became final").  Furthermore, neither the Supreme Court, nor the Tenth Circuit, has made *Graham* applicable retroactively to cases on collateral review.  *See e.g. United States v. Mora*, 293 F.3d 1213*,* 1219 (10th Cir. 2002) (applying framework of *Teague v. Lane*, 489 U.S. 288 (1989) to hold that *Apprendi v. New Jersey*, 530 U.S. 466 (2000) is not retroactively applicable to initial habeas petitions).  Petitioner's conviction for felony murder is outside of *Graham's* holding, in any event.  "The absence of clearly established federal law is dispositive under § 2254(d)(1)."  *House*, 527 F.3d at 1018.  Petitioner cannot show that

his sentence to life imprisonment without parole for the crime of felony murder violated the Eighth Amendment under Supreme Court case law applicable to his conviction.

Petitioner's additional assertion that his prison sentence constitutes a "bill of attainder" misses the mark given that Petitioner was convicted by a jury of his peers after a twelve-day jury trial. A bill of attainder "legislatively determines guilt and inflicts punishment upon an identifiable individual without provision of the protections of a judicial trial." *Nixon v. Adm'r of Gen. Servs.*, 433 U.S. 425, 468 (1977).

Petitioner has failed to demonstrate that he is entitled to habeas relief for his seventh claim.

**E.     Claims Eight and Nine**

For his eighth claim, Petitioner argues that he was denied the effective assistance of trial counsel because counsel failed to file an adequate motion for new trial. Petition at 6c2. In claim nine, Petitioner asserts that his Sixth Amendment right to counsel was violated because (a) trial counsel labored under a conflict of interest in litigating the motion for new trial; and, (b) Petitioner's waiver of the conflict was invalid because he was not adequately advised at the time of his waiver about counsel's difficulty in litigating the new trial motion on account of the conflict. Petition at 6d.

The following proceedings in the state trial court form the bases for these claims. After the jury reached a verdict, Petitioner filed a motion for new trial arguing that the jury's verdict must be vacated because at the conclusion of the trial, but before the jury began its deliberations, a juror (Juror H) was confronted and cursed at by a member of the victim's family in the parking lot, which was discussed by the jury. State Court R., Vol. 1 at 213. The motion further asserts that during the trial, another juror was

exposed to negative comments about the case in the courthouse elevator.  *Id.*   The

motion was supported by affidavits of juror statements.  *Id.* at 216-229.

    In response to Petitioner's motion for new trial, the prosecution filed affidavits

stating that after the verdict was returned, one of the defense attorneys commented to

her colleagues about wanting to "slap the jury around" and "knock [the jurors'] heads

together." State Court R., Affidavits contained in January 16, 1996 sealed report.

Defense counsel filed affidavits denying the comments.  *Id.*

    The trial court held two hearings regarding the potential conflict of interest

created by counsel filing affidavits.  At the first hearing, Petitioner's counsel advised the

trial court that it was the defense's position that the statements in the affidavits

attributed to counsel were not adverse to Petitioner and were irrelevant to the incidents

alleged as the basis for Petitioner's motion for  new trial, but that Petitioner had agreed

to waive any potential conflict of interest.  State Court R., April 3, 1995 Hearing Tr. at 3-

6, 13-14.  The trial court then advised Petitioner about the nature of the allegations

against one of his attorneys and that one or both of his attorneys could be required to

testify in support of the motion for new trial which could create a potential conflict of

interest.  *Id.* at 14-17.  Petitioner indicated his intent to waive his right to conflict-free

counsel and requested outside counsel to represent him in entering a formal waiver at a

later date.  *Id.* at 17-20.

    At the second hearing, outside counsel explained in detail his discussions with

Petitioner about the underlying nature of the potential conflict, his right to conflict-free

counsel, and the ramifications of his waiver of that right.  State Court R., April 23, 1996

Hearing Tr. at 3-7.  The trial court then advised Petitioner again about his right to

conflict-free counsel:

> You have an absolute right to have lawyers who act only as lawyers for
> you. . . . [A] lawyer's job is to give his or her total and complete
> professional attention to his or her client, in this case yourself. And . . .
> when or if a lawyer becomes involved in a situation where that lawyer
> could be seen as a fact witness, that is, a witness to something that
> actually did happen or allegedly did happen or did not happen, if you
> would, . . . that lawyer cannot do the job that he or she should do and that
> you as the client should expect him or her to do.

*Id.* at 7-8.

The trial court went on to advise Petitioner that if he waived his right to conflict-

free counsel, he could not change his mind later.  *Id.* at 8-10.   After additional

questioning by the trial court, pursuant to which the Petitioner indicated that he fully

understood the nature of the conflict and the right he was waiving, the trial court

accepted the Petitioner's waiver.  *Id.* at 11-15.

Ten days later, the trial court held a hearing on the merits of Petitioner's motion

for new trial.  Petitioner was represented by trial counsel.  At the beginning of the

hearing, Petitioner's counsel requested that some pages from the district attorney's

office investigator's report be entered into evidence.  State Court R., May 3, 1996

Hearing Tr. at 6-7; State Court R., Vol. 3, Motion to Supp. Record on Appeal, Def.'s  Ex.

AAA.  This material involved statements by Juror M that (1) she was glared at; (2) Juror

H was cursed at and followed in the parking lot; (3) Juror M and other jurors felt there

might be retaliation; and (4) these incidents and fears influenced Juror M's verdict of

guilty.  State Court R., May 3, 1996 Hearing Tr. at 9-11.  The material was new in that

the investigator's report about Juror M reflected the confrontation with Juror H in a more

serious light than did the other jurors' affidavits, and the other incidents did not affect the

jurors.  The following colloquy occurred between the trial court and defense counsel:

> COURT: How is it that after all the time that your office had and the careful investigation you did, that none of this showed up in the affidavits provided by these jurors?
>
> COUNSEL:  Judge, when we interviewed [Juror M.], our investigator essentially asked some very closed-ended questions, received from her, if you will, a very truncated version of what took place.
>
> COURT: Why didn't you go back afterwards and get a further affidavit?
>
> COUNSEL: We could have; maybe we should have. We did not.
>
> COURT: Let's continue. You can submit the materials. I'll decide later on whether they should be considered.  I think I have to allow them to be made part of any record on request.  I'll wait until the argument is done to decide what to do with them.
> . . .
>
> COUNSEL: Judge, one other thing I want to point out.  And one of the concerns we had, after we received the response from the District Attorney when we received their brief, essentially there was the allegation there or the reference there was that we somehow were tampering with the jurors. [sic] It was difficult for us to approach them again, particularly in light of the response we received from the District Attorney.

*Id.*, at 11-13.

At the conclusion of the hearing, the trial court found that defense counsel did not

engage in any improper conduct with the jury.  *Id.* at 55.  The court then determined that

without evidence of what was actually said to Juror H in the parking lot or to another

juror in the elevator and the context of the statements, the court was "unable to

conclude that there was a reasonable possibility that the misconduct affected the verdict

to the defendant's detriment." *Id.* at 60, 62.  The trial court further observed that after

the comments were made to Juror H, the jurors did not reach a verdict until they

deliberated for another full day, advised the court they were deadlocked the following

37

morning, and received a modified *Allen* instruction,[2] which, the court found, lessened

the likelihood that the jury reached a verdict based on pressure from comments made in

the presence of Juror H in the parking lot.  *Id.* at 60-62.  The trial court denied the

motion for new trial.  *Id.*

      1.    *Claim Eight:  Ineffective assistance of counsel*

To prevail on his claim that trial counsel's assistance in litigating his motion for

new trial was constitutionally ineffective, Petitioner must show that: (1) counsel's legal

representation fell below an objective standard of reasonableness; and (2) "the deficient

performance prejudiced the defense."  *Strickland v. Washington*, 466 U.S. 668, 687-88

(1984). Judicial scrutiny of counsel's performance is highly deferential.  *Id.*  at 689.

Counsel's decisions are presumed to represent "sound trial strategy;" "[f]or counsel's

performance to be constitutionally ineffective, it must have been completely

unreasonable, not merely wrong."  *Boyd v. Ward*, 179 F.3d 904, 914 (10th Cir. 1999)

(internal quotations omitted).  Prejudice exists when there is a reasonable probability

that, but for counsel's defective representation, the result of the proceeding would have

been different.  *Strickland*, 466 U.S. at 693.  The Court need not address both prongs of

the *Strickland* inquiry if Petitioner's claim fails on one.  *Id.*  at 697.

The state appellate court applied the *Strickland* standard and determined the

following in resolving Petitioner's claim:

> Defendant contends his attorney rendered ineffective assistance because
> he failed to litigate adequately the motion for new trial. We disagree
> because his attorney investigated the juror incident extensively and

[2]  *Allen v. United States*, 164 U.S. 492 (1896).  "An *Allen* charge is a supplemental instruction . . . designed to encourage a divided jury to agree on a verdict." *United States v. LaVallee*,  439 F.3d 670, 689 (10th Cir. 2006) (quotation omitted).

obtained affidavits from a number of jurors, including Juror M. Although defendant contends his attorney should have obtained a more extensive affidavit from Juror M. and subpoenaed all the jurors, defendant has not alleged that any new information would have been presented, other than what was already before the trial court in some form, and has not shown that it would have affected the outcome of the case. *See Moore v. People*, 174 Colo. 570, 571-72, 485 P.2d 114, 115 (1971).

Pre-Answer Resp., Ex. M at 10-12.

The state appellate court resolved Petitioner's claim under the correct legal standard set forth in *Strickland. Id.* at 8-9. Petitioner therefore is not entitled to federal habeas relief unless the state court applied the *Strickland* test unreasonably.

Counsel's performance must be measured against Colorado's standard for setting aside the verdict. Under Colorado law, a person seeking to set aside the verdict on the ground of extraneous influence on the jury must establish the fact of improper communication and a reasonable possibility that the defendant was prejudiced as a result. *Wiser v. People*, 732 P.2d 1139, 1142 (Colo. 1987); *Ravin v. Gambrell By and Through Eddy,* 788 P.2d 817, 820 (Colo. 1990). However, the court may not consider the deliberative processes of the jurors. *Ravin*, 788 P.2d at 820. The trial court applied this test in ruling on Petitioner's motion for new trial. State Court R., May 3, 1996 Hearing Tr. at 55-62.

The state court record reflects that Petitioner's counsel investigated the incidents of asserted misconduct involving the jurors. Counsel then filed a motion for new trial supported by juror affidavits and affidavits from the defense investigator who interviewed the jurors, which discussed external communications that may have affected the jury's verdict. Petitioner also asked the trial court to consider the district attorney's investigator's notes of his interview with Juror M which contained more

39

detailed information.  Even if Petitioner's counsel or the defense investigator should have obtained a more detailed account from Juror H or Juror M, Petitioner has not shown what additional information the new affidavits would contain to establish that the communications were improper, *see Ravin*, 788 P.2d at 820, or how the additional information would have changed the trial court's ruling on his motion for a new trial.  As observed aptly by the state appellate court, the notes taken by the prosecutor's investigator of his interview with Juror M were already before the trial court.  Petitioner's speculation that he was prejudiced is insufficient to sustain an ineffective assistance of counsel claim.  *See United States v. Boone*, 62 F.3d 323, 327 (10th Cir. 1995). Accordingly, the Court finds that the state appellate court's determination was an appropriate application of *Strickland* and Petitioner is not entitled to federal habeas relief for his eighth claim.

### 2.    Claim Nine: Conflict-of-interest

The Sixth Amendment right to effective assistance of counsel includes "a correlative right to representation by counsel that is free from conflicts of interest." *Wood v. Georgia*, 450 U.S. 261, 271 (1981)*; see also Holloway v. Arkansas,* 435 U.S. 475, 483-84 (1978).  This right is not limited to situations involving joint representation of co-defendants at a single trial, but extends to any situation where defense counsel owes conflicting duties to the defendant and some other person.  *See Wood*, 450 U.S. at 271-272.  A conflict of interest "results if counsel was forced to make choices advancing other interests to the detriment of his client."  *United States v. Alvarez*, 137 F.3d 1249, 1252 (10th Cir. 1998).  Where the trial court fails to inquire about the potential conflict of interest, the petitioner "must establish that an actual conflict of interest adversely

affected his lawyer's performance." *Cuyler v. Sullivan,* 446 U.S. 335, 350 (1980) (the possibility of conflict cannot impugn a criminal conviction).  To show an actual conflict, "the petitioner must be able to point to specific instances in the record" that suggest his interests were damaged for the benefit of another party.  *United States v. Alvarez*, 137 F.3d 1249, 1252 (10th Cir. 1998) (internal quotation omitted).

The *Sullivan* standard operates as an exception to the normal requirements of *Strickland*, and was announced in the context of an attorney's multiple concurrent representation of defendants. *Sullivan*, 446 U.S. at 337-38.  In *Mickens v. Taylor*, 535 U.S. 162, 174 (2002), the Supreme Court noted that the Circuit Courts of Appeal have have expanded the application of *Sullivan* to many different types of alleged attorney ethical conflicts.  *See*, *e.g.*, *United States v. Winkle*, 722 F.2d 605, 610 (10th Cir. 1983) (prior representation of a prosecution witness); *United States v. Soto Hernandez*, 849 F.2d 1325, 1328-29 (10th Cir. 1988) (prior representation, in unrelated child custody case, of individual whom defendant claimed had coerced him into committing crime). The *Mickens* Court cautioned, however, that its own conflict jurisprudence had not yet reached beyond the context of joint representation: "the language of *Sullivan* itself does not clearly establish, or indeed even support, such expansive application . . . . Both *Sullivan* itself [   ] and *Holloway* [   ] stressed the high probability or prejudice arising from multiple concurrent representation, and the difficulty of proving that prejudice.  Not all attorney conflicts present comparable difficulties."  535 U.S. at 175.  The Court then stated that any extension of *Sullivan* outside the joint representation context remained an "open question." *Id.* at 176.

A client may waive his right to conflict-free representation, when done voluntarily, knowingly and intelligently. *See Estelle v. Smith*, 451 U.S. 454, 471 n.16 (1981); *Martinez v. Zavaras*, 300 F.3d 1259, 1262 (10th Cir. 2003). The trial court bears the duty to ensure that the defendant understands the nature of the conflict and its effect on counsel's representation before waiving it. *Wheat v. United States*, 486 U.S. 153, 161 (1988).

Petitioner asserts that at the time he waived his right to conflict-free representation, the only "conflict" of which he was advised was the potential conflict of interest created by defense counsel acting as both a witness and an advocate with regard to counsel filing affidavits in reply to the prosecution's response to Petitioner's motion for new trial. He further asserts that he was not aware of, and therefore did not waive, the conflict created by defense counsel's difficulty in investigating the motion for new trial. Petition at 6d.

The state appellate court resolved Petitioner's conflict of interest claim as follows:

Defendant also contends his conviction should be reversed because his trial attorney labored under a conflict of interest while litigating the new trial motion. We disagree.

If a defendant demonstrates his counsel labored under an actual conflict of interest that adversely affected counsel's performance, the defendant need not demonstrate a probable prejudicial effect on the outcome of the trial to prevail on a claim of ineffective assistance of counsel. *People v. Miera*, 183 P.3d 672, 675 (Colo. App. 2008).

Postconviction counsel alleged that an actual conflict was created by defendant's trial attorney when he commented to the effect of wanting to "slap the jury around" or "knock the [jurors'] heads together," and this made it difficult to investigate the matter further. However, after consulting with outside counsel, defendant expressly waived any conflict with his trial attorneys. *See People v. Harlan*, 54 P.3d 871, 879 (Colo. 2002) (defendant may waive his right to conflict-free counsel). Further, he did not

provide facts supporting the allegation that those attorneys experienced difficulty investigating the new trial motion. *See Trujillo*, 169 P.3d at 239.

Accordingly, we reject defendant's contention.

Pre-Answer Resp. Ex. M at 10-11.

The state appellate court applied the *Sullivan* standard in resolving Petitioner's claim. *See People v. Miera*, 183 P.3d at 675 (citing *Sullivan*, 446 U.S. at 348-50). As discussed above, it remains an open question under *Sullivan* whether the *Sullivan* standard applies to contexts outside the joint representation of defendants. Under the AEDPA, an unreasonable application of federal law may occur if the state court either unreasonably extends, or unreasonably refuses to extend, a legal principle from Supreme Court precedent to a new context where it should apply. *House*, 527 F.3d at 1018. The Court finds that Petitioner's claim fails under either scenario.

First, assuming that the state appellate court reasonably extended *Sullivan* to the factual circumstances here, the state court's determination comported with that decision. Petitioner rests his Sixth Amendment claim on a single representation made by his counsel to the trial court during the May 3, 1996 hearing on the motion for a new trial. Counsel told the trial court that he did not ask any of the jurors for more detailed affidavits after receiving the district attorney's investigator's report of his interview with Juror M because "[i]t was difficult for us to approach [the jurors] again" after certain members of the prosecutor's team suggested that one of the defense attorneys had engaged in jury tampering. State Court R., May 3, 1996 Hearing Tr. at 13. Not surprisingly, this equivocal statement by counsel did not persuade the Colorado Court of Appeals that Petitioner's attorneys experienced difficulty investigating the new trial motion. The state court's factual finding is accorded deference in this proceeding, *see*

28 U.S.C. § 2254(e)(1), and Petitioner has not pointed to any clear and convincing evidence in the record to show an actual impediment to counsel's ability to investigate the extraneous influences and communications which prompted the motion for new trial. Indeed, the state court record supports the trial court's implicit finding that Petitioner's trial attorneys were satisfied with the affidavits they obtained from the jurors and the defense investigator and that counsel intended to rely on those affidavits and the district attorney's investigator's notes at the hearing in support of the motion for new trial. The Court finds that the state appellate court's determination of Petitioner's Sixth Amendment claim was reasonable under *Sullivan* because Petitioner has failed to demonstrate that his interests were damaged for the personal or professional benefit of his trial counsel such that an actual conflict of interest existed between them. Petitioner therefore has not established the constitutional predicate for his Sixth Amendment conflict of interest claim. *See Sullivan*, 446 U.S. at 350.

Alternatively, if the state appellate court unreasonably extended *Sullivan* to the factual circumstances here, the Court reviews Petitioner's conflict of interest claim de novo under the *Strickland* standard. *Mickens*, 535 U.S. at 175-76. As discussed in claim eight, Petitioner has failed to demonstrate a reasonable probability that the outcome of his motion for a new trial would have been different if counsel would have obtained additional affidavits from Juror M and other jurors. Petitioner does not state specifically what information would have been included in the additional affidavits which would have altered the trial court's ruling. Accordingly, Petitioner has failed to demonstrate that he was prejudiced by the asserted conflict of interest.

Because the Court finds no infringement of Petitioner's Sixth Amendment right to conflict-free representation, the Court does not consider whether he knowingly and intelligently waived that right.  Petitioner is not entitled to federal habeas relief for his ninth claim.

## IV. CONCLUSION

Accordingly, it is ORDERED that Petitioner Christopher Selectman's Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 ("Petition") (Doc. No. 1) is DENIED and the civil action is dismissed WITH PREJUDICE.  It is

FURTHER ORDERED that each party shall bear his own costs and attorney's fees.  It is

FURTHER ORDERED that no certificate of appealability will issue because Petitioner Christopher Selectman has not made a substantial showing of the denial of a constitutional right, pursuant to 28 U.S.C. § 2253(c).

Dated this 28th day of April, 2011.

BY THE COURT:

_____
WILLIAM J. MARTINEZ
United States District Judge